**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SERGIO VERDU,<br><br>                    Plaintiff,<br><br>          v.<br><br>YEOHEE IM,<br><br>                    Defendant. | Civil Action No. 19-16394 (ZNQ) (DEA)<br><br>**OPINION** |

**QURAISHI, District Judge**

This matter comes before the Court upon the Motion for Summary Judgment (the "Motion," ECF No. 60) filed by Defendant Yeohee Im ("Defendant"). In support of the Motion, Defendant filed a brief ("Moving Br.," ECF No. 60-1) and a Statement of Undisputed Material Facts ("SUMF," ECF No. 60-2). Plaintiff Sergio Verdu ("Plaintiff") filed an opposition ("Opp'n Br.," ECF No. 66), a Response to Defendant's SUMF ("RSMF," ECF No. 66-1), and a supplemental Statement of Disputed Material Facts pursuant to Local Civil Rule 56.1 ("SSDF," ECF No. 66-2).[1] Defendant filed a reply brief ("Reply Br.," ECF No. 70) and a response to Plaintiff's SSDF ("RSDF," ECF No. 70-1). After careful consideration of the parties' submissions, the Court decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[2] For the reasons outlined below, the Court will GRANT Defendant's Motion for Summary Judgment.

---

[1] Plaintiff's SSDF attempts to introduce various legal conclusions and arguments along with its facts. This is explicitly prohibited under the Local Civil Rules. L. Civ. R. 56.1 ("Each statement of material facts shall be a separate document (not part of a brief) and shall not contain legal argument or conclusions of law.") At one point, Plaintiff raises a spoliation argument in his statement, (SSDF ¶ 9 n.8), that he does not raise in his opposition brief. The Court does not address this argument because it was not presented properly.

[2] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

## I.   **BACKGROUND**

### A.   **Procedural Background**

Plaintiff filed a complaint in the New Jersey Superior Court stemming from a "private, educational disciplinary matter" between himself and Defendant, a former graduate student of his at Princeton University. (Compl., ECF No. 1-2 ¶ 1.) The Complaint asserts a claim of defamation (Count One), and two claims of false light / invasion of privacy (Counts Two and Three). On August 6, 2019, Defendant removed the case to this Court on diversity jurisdiction grounds. (ECF No. 1.) Defendant filed an Answer to the Complaint (ECF No. 4), followed by an Amended Answer on December 12, 2019 (ECF No. 17). On January 14, 2021, Defendant filed the instant Motion for Summary Judgment. The Court then referred this case to mediation pursuant to Local Civil Rule 301.1 (ECF No. 75). The case was administratively terminated pending the mediation, (*see* Clerk's docket entry dated March 22, 2023), which was ultimately unsuccessful.

### B.   **Factual Background**

The Court recites only the facts that it finds are undisputed and relevant to the instant Motion.[3]

Starting in Fall 2015, Defendant was a graduate student at Princeton University ("Princeton") pursuing her Ph.D. in electrical engineering. (SUMF ¶ 9; RSMF ¶ 9.) She selected Plaintiff as her graduate advisor after her first semester because of his prominent reputation in the field of Information Theory. (SUMF ¶ 9; RSMF ¶ 9.) By that time, Plaintiff had taught at Princeton for over 30 years, written several books, won several awards, and had "risen to the top

---

[3] The Court construes as undisputed all facts in the SUMF to which Plaintiff objects without citation to any evidence of record. L. Civ. R. 56.1 ("The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."); *see also VIP Couture, Inc. v. C.H. Robinson Int'l, Inc.*, Civ. No. 16-3596, 2018 WL 259947, at *2 nn.2, 3 (D.N.J. Jan. 2, 2018) (treating as undisputed factual statements to which the opposing party responded with a "bare assertion" that "did not support its response with any citation to the record").

of the ranks within his field." (SUMF ¶ 10; RSMF ¶ 10.)  Defendant earned an "A" in Plaintiff's Information Theory course, and Plaintiff asked Defendant to help with the book that he was working on. (SUMF ¶¶ 12–13; RSMF ¶¶ 12–13.)  The parties had a "good, cordial working relationship" for the first year of working together, through at least the end of January 2017. (SUMF ¶ 14; RSMF ¶ 14.)

From mid-February 2017 to early March 2017, Plaintiff invited Defendant to his home on three separate occasions, during which they were alone and often drinking alcohol provided by Plaintiff. (SUMF ¶ 15; RSMF ¶ 15.)  After leaving Plaintiff's home on one such occasion on March 10, 2017, Defendant texted a fellow graduate student, stating: "Don't sleep . . . My advisor asked me to watch some popular Korean movie at his place so we did and it was just two of us and he was touching my thigh. I should've said no but I couldn't think any [sic] at the time." (SUMF ¶ 29; RSMF ¶ 29.)  That same evening, the classmate met Defendant at her apartment. (SUMF ¶ 30; RSMF ¶ 30.)  Defendant then sent an email to Plaintiff early the next morning, which read: "Hello professor, After I came home, I realized I wasn't comfortable with you touching my leg. I consider our relationship solely as advisor and student and would appreciate if you do so. I think it would be nice to set some boundaries." (SUMF ¶ 31; RSMF ¶ 31.)  A few hours later, Plaintiff responded: "OMG Yeohee, needless to say I totally agree about the boundaries. Are you available on Monday at 10 to clear it up?" (SUMF ¶ 32; RSMF ¶ 32.)  The parties met on Monday, March 13, 2017 to discuss what had happened, during which time Defendant testified that she was "scared to be with him" and "had no idea what would happen." (SUMF ¶ 33, 35; RSMF ¶¶ 33, 35.)  Sometime between March 10 and March 13 Defendant called Princeton's Sexual Harassment/Assault Advising, Resources and Education ("SHARE") program for counseling. (SUMF ¶¶ 33–34; RSMF ¶¶ 33–34.)

These events became the subject of a Title IX investigation at Princeton.  (SUMF ¶ 16; RSMF ¶ 16.)   After interviewing the parties, reviewing dozens of emails, text messages, and numerous other documents, and examining photographs taken at Plaintiff's home, a three-person panel[4] concluded that Plaintiff had violated Princeton's policy on sexual harassment.  (SUMF ¶¶ 18–20 (quoting "Title IX Memo," ECF No. 60-4); RSMF ¶¶ 18–20.)  The panel found that Plaintiff sexually touched Defendant on February 23, 2017 by placing his arm around her shoulders, and on March 10, 2017 by "making a sexual joke about the film, placing his arm around her shoulders, placing his hand on her upper thigh near her underwear line, and, while cleaning wine off of her shirt, touching her stomach through the outside of her shirt and touching the bottom of her bra." (SUMF ¶ 25; RSMF ¶ 25.)   The panel further concluded that Plaintiff's sexual harassment of Defendant was "severe," "unwelcome," and "sexual in nature," and that "a reasonable person in [Defendant's] position would have viewed [Plaintiff's] behavior as sexual advances."  (SUMF ¶¶ 20, 25, 27–28; RSMF ¶¶ 20, 25, 27–28.)

On June 9, 2017, Princeton sent Defendant and Plaintiff the panel's findings[5] and explained to Plaintiff that he would as a result be placed on probation for one year, have to complete the university's Community Integrity Program, and would have it added to his permanent record. (SUMF ¶¶ 49–50; RSMF ¶¶ 49–50.)   Upon learning of Princeton's disciplinary actions and explanation therefor, Defendant responded: "I think that's a very unacceptable answer and I think the [U]niversity has to come up with a better excuse."  (SUMF ¶¶ 55, 57; RSMF ¶¶ 55, 57.)  In the Fall of 2017, Defendant publicly raised her concerns to a Huffington Post reporter, who published an article discussing not only Plaintiff's actions but also "the broader problem of sexual harassment on university campuses."  (SUMF ¶¶ 58–60; RSMF ¶¶ 58–60.)  Subsequently, numerous other

---

[4] The Title IX panel was comprised of the Director of Gender Equity and Title IX Administration, the Deputy Dean of the Faculty, and the Associate Dean for Student Life.  (SUMF ¶ 18; RSMF ¶ 18.)
[5] Different "outcome letters" were circulated to Plaintiff and Defendant.  (SUMF ¶ 53; RSMF ¶ 53.)

media outlets gave public attention to what had occurred between Plaintiff and Defendant. (SUMF ¶¶ 64–66; RSMF ¶¶ 64–66.) There was then a second investigation by Princeton about an alleged romantic relationship between Plaintiff and one of his former students,[6] after which Defendant was placed on administrative leave. (SUMF ¶¶ 88, 93; RSMF ¶¶ 88, 93.) Subsequently, Princeton terminated Plaintiff's employment and, on the same day, issued a memorandum updating its policies on sexual misconduct. (SUMF ¶ 112; RSMF ¶ 112.) Then, on September 25, 2018, Defendant wrote a lengthy Facebook post discussing her personal experience, the penalty that was initially imposed on Plaintiff, and the general role of punishment in preventing "further sexual crimes." (SUMF ¶¶ 114–17; RSMF ¶¶ 114–17.)

## II.    **JURISDICTION**

The Court has diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(2) because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interests and costs.

## III.    **LEGAL STANDARD**

Rule 56 provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be

---

[6] The details of this relationship are not material to the instant Motion.

discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine disputes of material fact exist). "[U]nsupported allegations in . . . pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 248–49. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

## IV.    **DISCUSSION**

Defendant seeks summary judgment on all counts in the Complaint.  The Court will consider each count in turn.

### A.    **Defamation Claim**

Count One asserts a claim for defamation.  Under New Jersey law, defamation consists of: "(1) a false and defamatory statement; (2) communication of the statement to a third party; and (3) fault amounting to negligence or actual malice on the part of the [speaker]." *Lee v. TMZ Prods. Inc.*, 710 F. App'x 551, 560 (3d Cir. 2017) (citing *DeAngelis v. Hill*, 847 A.2d 1261, 1267–68 (N.J. 2004)).  A heightened "actual malice" standard applies "when a matter of public concern is involved," even in "defamation lawsuits brought by private-figure plaintiffs" against both media and non-media defendants. *Lipsky v. Conn. Gen. Life Ins. Co.*, Civ. No. 13-105, 2013 WL 5354511, at *2 (D.N.J. Sept. 24, 2013); *Lee*, 710 F. App'x at 560 (citing *Durando v. Nutley Sun*, 37 A.3d 449, 457–58 (N.J. 2012)).  The actual malice standard "imposes a heavy burden" by requiring that the defendant "made the statement 'knowing that it was false or with a reckless disregard for the truth.'" *Lee*, 710 F. App'x at 560; *Lipsky*, 2013 WL 5354511, at *2 (quoting *DeAngelis*, 847 A.2d at 1270).  "The defendant's motivation for making the statement is irrelevant" to the actual malice inquiry, "and thus hostility and ill will on the part of the defendant are not considered." *Lipsky*, 2013 WL 5354511, at *2 (citing *DeAngelis*, 847 A.2d at 1270).

### 1.    **Whether a Showing of Actual Malice is Required in this Case**

As a first matter, the parties dispute whether the actual malice standard applies in this case. Defendant argues that it does apply because the relevant statements involve a matter of public interest and concern—the problem of sexual harassment and sexual assault not just generally, but in schools and universities in particular and the need for those institutions to "properly deter such conduct." (Moving Br. at 8–12, 16–19 (highlighting recent attention by both the press and the

government to such issues[7]); *see also id.* at 19–20 (detailing the subjects of Defendant's statements).)  Plaintiff insists that the defamatory statements do not involve a matter of public interest and concern because they reflect only Defendant's "personal experience" and were "not intended in any way to seek redress for a pressing issue," and maintains that the applicable standard of fault is therefore ordinary negligence. (*Id.* at 13–16.)  Plaintiff asserts that Defendant made the defamatory statements not because she was seeking a change in Princeton's policy, which had already been changed by that time, but because she was determined, alongside another electrical engineering professor at Princeton, Professor Paul Cuff, to "get Plaintiff fired from Princeton."[8] (*Id.* at 1, 14.)

The Court finds that actual malice is the appropriate standard in this case because Defendant's statements do involve a "matter of public interest and concern."  The record reflects that the statements do not solely pertain to Defendant's private and personal experience with Plaintiff, as Plaintiff contends, but rather more broadly concern the issue of sexual harassment and sexual assault on school and university campuses, which, as Defendant points out, has been given much attention by the press, the government, and the general public in recent years.  Indeed, the content of the statements bears on the "public's vital interests" as opposed to "predominantly relat[ing] to the economic interests of [Defendant]." *Prof'l Recovery Servs., Inc. v. Gen. Elec.*, 642 F. Supp. 2d 391, 406 (D.N.J. 2009) (quoting *Senna v. Florimont*, 958 A.2d 427, 444 (N.J. 2008)).  The form of the statements, which were presented via social media and the press, further supports that they involve a matter of public interest and concern, as well as the context—

---

[7] Defendant further articulates how her statements warrant application of the actual malice standard under the content, form, and context test, (*see* Moving Br. at 14–16), by distinguishing this case from others in which courts found that the speech at issue "sought only to advance the narrow commercial interest of the speaker and therefore did not involve a matter of public interest and concern." (*Id.* at 16 (internal quotation marks omitted).)

[8] Plaintiff contends Professor Cuff blamed Plaintiff for losing his bid for tenure and theorizes that there was "extensive coordination" between Defendant and Professor Cuff in an effort to have Plaintiff removed from Princeton. (Opp'n Br. at 1–2, 4–8, 17–18.)

Defendant made the statements as a student following Princeton's Title IX finding that her professor sexually harassed her in violation of the school's policy, expressing specific concern that if she "hadn't done anything, other students would be in the same danger I was." (SUMF ¶ 61; RSMF ¶ 61.) Given that Defendant was speaking about matters of public concern, Plaintiff must show actual malice to substantiate his defamation claim. The Court turns next to whether he has met that burden.

### 2.    Whether Plaintiff Raises a Genuine Issue of Material Fact Regarding Defendant's Actual Malice

Defendant's motion argues that Plaintiff has failed to produce the required clear and convincing evidence of her actual malice, especially given that: Defendant took action in "immediate response" to the March 10, 2017 incident; Defendant had nothing to gain and everything to lose, academically and professionally, by reporting Plaintiff's conduct; Princeton's Title IX Panel concluded that Plaintiff touched her in a way that was "unwelcome" and "sexual in nature" and that constituted sexual harassment; and Plaintiff's conduct in fact constitutes a crime under New Jersey law. (*Id.* at 21–27, 30–36.) Emphasizing that actual malice requires a subjective inquiry into the speaker's perception of the truth or falsity of her statements, Defendant maintains that she not only "honestly believed" she was telling the truth when she made the statements at issue, but she in fact was telling the truth. (*Id.* at 21–22, 28–29.) Defendant adds that summary judgment is generally favored in "meritless defamation actions" like this one. (Moving Br. at 1, 4–5.)

Plaintiff urges that, because the parties provide conflicting testimony about what transpired between them and there were no other witnesses during those events, this case concerns at its heart a credibility determination that "categorically preclude[] summary judgment." (Opp'n Br. at 1, 3, 9–10, 16–17.) According to Plaintiff, given that Defendant "is not a mere publisher relying on

information from a separate source, but rather, is the source of the defamatory information herself,"

her credibility is the central issue, which requires resolution by a fact finder. (*Id.* at 12–13.) Under

either an actual malice or negligence standard, Plaintiff argues, disputed material facts preclude

Defendant from meeting her burden on summary judgment.[9]  (*Id.* at 2–3, 13, 16–20 (claiming there

is "extensive evidence of deception, collaboration, and motivation for Defendant to fabricate her

claims against Plaintiff").)  Plaintiff adds that Defendant cannot rely on the Title IX Memo's

findings concerning the truth of her accusations because the Memo is inadmissible hearsay.[10]  (*Id.*

at 19–20.)

Here, the analysis centers on Defendant's state of mind when she made the allegedly

defamatory statements.  First, the Court rejects Plaintiff's argument that credibility determinations

preclude summary judgment in cases like this one.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 256–57 (1986) (rejecting argument that credibility questions preclude summary judgment).

In fact, the New Jersey Appellate Division has made clear that negative credibility assessments

"do[] not constitute clear and convincing evidence of actual malice," and "discredited testimony

does not rebut an inference of actual malice that the record supports."  *Berkery v. Est. of Stuart*,

988 A.2d 1201, 1212 (N.J. Super. Ct. App. Div. 2010) ("[E]ven if a jury were to believe plaintiff's

allegations and find that [defendant] is not credible, such a conclusion would not support a finding

of actual malice.") (internal quotation marks omitted).  Still, it is Defendant's burden on this motion

to show that no material facts are in dispute[11] and that Plaintiff fails to establish that a reasonable

---

[9] Plaintiff argues that the correct standard for him to survive summary judgment is not whether he can prove defamation by clear and convincing evidence, but instead if the evidence "could lead a factfinder to conclude that the defendant acted with [the requisite level of fault]." (*Id.* at 11–12.)  In response, Defendant asserts that clear and convincing evidence of actual malice is in fact the appropriate standard, and moreover that credibility issues cannot overcome that burden. (Reply Br. at 1–2, 6–9.)

[10] Defendant responds by asserting she is not using the Title IX Memo to assert the truth of the matter therein, but instead to show her state of mind. (Reply Br. at 10–11.)

[11] Plaintiff's SSDF, to the extent it contains purported facts and not legal arguments, puts forth only facts that this Court finds immaterial to the instant Motion.  Notably, Defendant's intent behind making the statements is irrelevant to the actual malice inquiry, and Plaintiff's SSDF primarily serves to suggest that Defendant conspired with Professor

jury could find, by clear and convincing evidence, that she made the statements with actual malice—in other words, with knowledge of, or reckless disregard as to, their falsity.[12]  *Marino*, 2017 WL 216691, at *7, *9.

As set forth above, it is undisputed that on three occasions from February to March 2017, Plaintiff invited Defendant to his home, where the two were alone.  It is also undisputed that on March 10, 2017, Plaintiff touched Defendant's leg, served Plaintiff alcohol while they were alone in his house, and attempted to help clean a stain off of Defendant's sweatshirt.[13]  It is further undisputed that Defendant texted her classmate that same night about the incident, who visited Defendant's apartment, after which Defendant sent an email to Plaintiff about it early the next morning, expressing that she "wasn't comfortable with [him] touching [her] leg."  (SUMF ¶ 31; RSMF ¶ 31.)  Moreover, it is undisputed that: within three days following the events of March 10, Defendant sought counseling through Princeton's SHARE program; the Title IX panel conducted an investigation after which it concluded that Plaintiff had sexually harassed Plaintiff, in violation of the school's sexual harassment policy; the panel concluded, *inter alia*, that Plaintiff's sexual harassment of Defendant was "severe," "unwelcome," and "sexual in nature," and that "a reasonable person in [Defendant's] position would have viewed [Plaintiff's] behavior as sexual advances," (SUMF ¶¶ 20, 25, 27–28; RSMF ¶¶ 20, 25, 27–28); Defendant was made aware of these findings and found Princeton's disciplinary measures imposed on Plaintiff to be "very unacceptable," (SUMF ¶¶ 55, 57; RSMF ¶¶ 55, 57); and that there was a second investigation

---

Cuff to get Plaintiff fired from Princeton.  Even if that were Defendant's motive, which the Court does not suggest that it was, that would not help prove actual malice here.

[12] The Court rejects Plaintiff's argument that the heightened clear and convincing evidence standard does not apply; Plaintiff relies on *Dairy Stores* for this proposition, which as Defendant points out is an outdated opinion regarding this issue.  *Compare Dairy Stores, Inc. v. Sentinel Pub. Co.*, 516 A.2d 220, 236 (N.J. 1986), *with DeAngelis*, 847 A.2d at 1270 ("[W]e must determine whether a reasonable fact-finder could find by clear and convincing evidence that defendant published the newsletter with actual malice.").

[13] (*See* Plaintiff's assertion in SSDF ¶ 3(c).)

conducted regarding Plaintiff's allegedly sexual conduct with another former student, (SUMF ¶ 88; RSMF ¶ 88).

The Court finds that the Title IX Memo also weighs in Defendant's favor. The Memo is admissible because Defendant is relying on it as evidence of her state of mind while making the alleged defamatory statements, rather than for the truth of the Memo's contents. It does not constitute hearsay when used for this purpose. Fed. R. Evid. 801(c); *see, e.g.*, *New Show Studios LLC v. Needle*, Civ No. 14-1250, 2016 WL 5745078, at *6 (C.D. Cal. Sept. 29, 2016) (finding an out of court statement is not hearsay when it is being entered for the purpose of establishing declarant's state of mind while making alleged defamatory statements). Accordingly, insofar as the Title IX Memo concludes that Plaintiff was responsible for sexually harassing Defendant, it is evidence that weighs against Defendant's actual malice in making statements to that effect.[14]

Plaintiff's opposition fails to cite evidence leading to a disputed material fact as to Defendant's purported actual malice. Instead, it raises the following arguments:

- Plaintiff cites the parties' conflicting testimony regarding the events that transpired at Plaintiff's house—but even when there are assertions that "the jury might, and legally could, disbelieve the defendant's denial . . . of actual malice," the plaintiff "is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict," which Plaintiff has not done here. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986). Moreover, as noted above, credibility issues do not constitute clear and convincing evidence of actual malice. *Berkery*, 988 A.2d at 1212.

---

[14] Among his attempts to discredit the Title IX Memo, Plaintiff asserts as follows: "Defendant would have this court hold that she was entitled to rely on the findings of people who believed her own lies to support a claim that she then believed them, too. The argument is tautological." (Plf's SSDF at 1 n.1.) This argument ignores the fact that Princeton's investigation involved more than merely interviewing Defendant.

- Plaintiff cites some discrepancies between Defendant's testimony and descriptions by the press of certain details of Plaintiff's sexual touching (*see* SSDF ¶ 3)—but Plaintiff does not explain how these minor inconsistencies speak to Defendant's purported actual malice at the time she made the defamatory statements.

- Plaintiff theorizes that Professor Cuff helped orchestrate Defendant's accusations against Plaintiff—but even if the facts suggested that Defendant was motivated to make the statements by a malicious intent, alongside Professor Cuff, to get Plaintiff fired from Princeton, which the Court does not suggest that they do, that would not help prove actual malice here because intent is irrelevant to the question of whether Defendant made the statements with knowledge of or "reckless disregard" as to their falsity. Furthermore, Professor Cuff's state of mind, as a non-party, is wholly irrelevant to that inquiry.

Based on the material, undisputed facts, the Court finds that a reasonable jury cannot conclude, by clear and convincing evidence, that Defendant acted with actual malice in making the statements. To the contrary, the evidence shows that Defendant made the statements, if not with the honest belief that she was telling the truth—*i.e.*, that Plaintiff's conduct in fact did constitute "sexual crimes"— at least without the requisite reckless disregard as to their falsity. As such, the Court finds that Defendant has more than met her burden on this motion. The Court therefore will grant summary judgment as to Count One of the Complaint.

**B.    False Light / Invasion of Privacy Claims**

Counts Two and Three assert claims for false light / invasion of privacy. A false light claim has two elements: 1) that the plaintiff was placed in a false light that "would be highly offensive to a reasonable person," and 2) the defendant "had knowledge of or acted in reckless disregard as to the falsity of" the statement. *Marino v. Westfield Bd. of Educ.*, Civ. No. 16-361,

2017 WL 216691, at *9 (D.N.J. Jan. 18, 2017) (quoting *Durando*, 37 A.3d at 458) (internal quotation marks omitted). "Under New Jersey law, the knowledge requirement parallels the actual-malice standard of defamation." *Id.*; *see also Soobzokov v. Lichtblau*, 664 F. App'x 163, 169 (3d Cir. 2016) ("New Jersey extends the same constitutional protection to false light . . . claims as it does to defamation claims.") (citing *Durando*, 37 A.3d at 458, and *Decker v. Princeton Packet, Inc.*, 561 A.2d 1122, 1129 (N.J. 1989)).

Defendant argues that, for all of the same reasons she has articulated with respect to Plaintiff's defamation claim, Plaintiff cannot show actual malice by the clear and convincing evidence required for his false light claims, and therefore Counts Two and Three fail. (Moving Br. at 42–44.)

Plaintiff argues, on the other hand, that Defendant failed to "meaningfully address" her false light claims and therefore waived any argument against them.[15] (Opp'n Br. at 21–22.) Defendant's argument is inchoate, according to Plaintiff, because it fails to address the specific facts and claims behind the false light causes of action; for example, Count Two alleges that Defendant provided selective and misleading information to journalists and members of Princeton's student body and faculty, which Defendant fails to address. (*Id.*)

Here, the Court finds that it must also grant summary judgment as to Counts Two and Three because of Plaintiff's failure to show that a reasonable jury could find actual malice on the part of Defendant by clear and convincing evidence. *See Marino*, 2017 WL 216691, at *9 (false light claims require actual malice); *Soobzokov*, 664 F. App'x at 169 (finding lack of actual malice precluded both claims "[b]ecause we have already found that the cited passages do not constitute

---

[15] Plaintiff also argues that Defendant has waived a statute of limitations argument because she attempts to raise it in a footnote of her moving brief rather than in the body of her brief. On this issue, the Court agrees with Plaintiff. Defendant's attempt to raise the substantive issue of a statute of limitations defense solely in a footnote is improper. The Court therefore deems that issue waived. *John Wyeth & Bro. Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).

defamation and deserve constitutional protection, [and so plaintiff's] false light . . . claims also fail"). The Court thus finds that Defendant is also entitled to summary judgment as to Counts Two and Three of the Complaint.

## V.   **CONCLUSION**

For the reasons outlined above, Defendant's Motion for Summary Judgment will be GRANTED. An appropriate Order will follow.

Date: January 31, 2024

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE